# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYREE TYQUAN MOY,** | : | **CIVIL NO. 1:18-CV-1575** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **KEVIN DEPARLOS,** *et al.,* | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Plaintiff Tyree Tyquan Moy ("Moy") is an inmate currently under the jurisdiction of the Department of Corrections ("DOC") who was housed at all relevant times at the Lycoming County Prison, in Williamsport, Pennsylvania. Moy commenced this action by filing complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Moy subsequently filed a supplement to the complaint. (Doc. 8). Named as defendants are Kevin DeParlos, Brad Shoemaker, Ryan Barnes, Harry Entz, Kim Poorman, Mayleen Murphy, Erin Dosvack, Aisha Glover, and Andrea Hoover[1] (collectively, "Lycoming County defendants"), and William Keenan, M.D. ("Dr. Keenan"). Before the court are two Rule 12(b) motions (Doc. 30, 31) to dismiss filed by the Lycoming County defendants and Dr. Keenan, respectively. For the reasons set forth below, the Lycoming County defendants' motion (Doc. 30) will be granted in part and denied in part, and Dr. Keenan's motion (Doc. 31) will be denied.

---

[1] Andrea Hoover has not yet been properly served or joined as a defendant in this action. An appropriate service order shall issue on this date.

I. **Allegations of the Complaint**

Moy was committed to the Lycoming County Prison on November 29, 2017. (Doc. 1, at 4). Moy claims that he is allergic to onions, someone at the prison hide onions in his food, and he received inadequate medical treatment for an allergic reaction to the onions. (Id. at 10). Moy also alleges that unnamed maintenance staff at the prison sawed metal objects, causing smoke and fire, which he inhaled. (Id.) Moy alleges that he received inadequate medical treatment for the smoke inhalation. (Id.)

Defendant DeParlos, in his role as Warden of the prison, was allegedly responsible for the conduct of all defendants and operations of the prison until May 2018. (Doc. 1, at 11; Doc. 8, at 1). Moy alleges that defendant DeParlos denied his grievance regarding a denial of access to the courts claim. (Doc. 8, at 5, ¶ 7).

Moy states that defendant Shoemaker was named Warden in May 2018 and became responsible for the conduct of all defendants and the operations of the prison from that date forward. (Doc. 1, at 11; Doc. 8, at 1). Moy asserts that defendant Shoemaker denied his grievance regarding a denial of access to the courts claim. (Doc. 8, at 5, ¶ 7). Moy states that defendant Barnes assumed the role of Deputy Warden in May 2018 and was "accountable" for all defendants. (Doc. 8, at 1). Moy also states that defendants Shoemaker and Barnes arrived at his cell-block after he engaged in a fight with another inmate. (Doc. 8, at 6, ¶ 10).

Moy alleges that defendant Entz was a first shift supervisor. (Doc. 8, at 1). After Moy had an allergic reaction to eating "hidden onions", defendant Entz escorted him to the Special Management Unit ("SMU"). (Doc. 1, at 9; Doc. 8, at 11).

Moy alleges that, in December 2017, defendant nurse Poorman ordered the removal of a nebulizer machine from his cell. (Doc. 1, at 10; Doc. 8, at 2 ¶ 2). He further asserts that all defendants were under her supervision. (Doc. 8, at 9 ¶ 14).

Moy alleges that defendant nurse Murphy provided inadequate medical care by denying and delaying medical treatment to him. (Doc. 1, at 9).

In January 2018, Moy claims that he choked on and spit up a two-inch chicken bone that was hidden inside his mashed potatoes. (Doc. 8, at 4, ¶ 5). He reported the event to prison staff and gave staff the chicken bone. (Id.) Defendant nurse Dosvack was the nurse at the prison that day and Moy alleges that she did not provide any treatment to him. (Id.) Moy further asserts that defendant Dosvack administered eye drops to his eye through the cell bars, and, because she was not paying attention to what she was doing, she poked him in the eye, causing pain and infection. (Doc. 1, at 11; Doc. 8, at 7-8, ¶ 11). Also in January 2018, Moy alleges that defendant Dosvack provided untimely treatment after he suffered an allergic reaction to onions. (Doc. 1, at 10). In June 2018, after Moy had another allergic reaction to eating hidden onions, defendant Dosvack treated him with Benadryl, and performed an oxygen test on him but failed to check his lungs. (Doc. 8, at 11, ¶ 16).

Moy alleges that defendant nurse Glover provided inadequate medical care for a swollen eye he suffered after a fight with another inmate, and failed to send him for treatment at an outside hospital. (Doc. 1, at 10-11; Doc. 8, at 6, ¶ 10). He further alleges that she provided untimely medical care after he had an allergic reaction to hidden onions. (Id.)

Moy alleges that defendants Poorman, Murphy, Dosvack, and Glover administered eye drops without wearing gloves, they had dirt and bacteria on their fingers, and had painted finger nails, which contaminated the eye drops, causing pain, infection, and redness. (Doc. 8, at 13, ¶ 18).

Moy alleges that defendant Dr. Keenan was the head doctor responsible for the actions of the prison medical staff. (Doc. 8, at 1). He avers that Dr. Keenan denied him eye drops that were prescribed to help heal his detached retina. (Id. at 2).

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also

4

consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.    Lycoming County Defendants' Motion**

   **A.    Deliberate Indifference to Medical Needs[2]**

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[2] Moy's claims are based on his status as a pretrial detainee.  Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  However, the Fourteenth Amendment provides "at least as much protection as does the Eighth Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of Appeals typically reviews both claims using the Eighth Amendment standard.  Gannaway v. Berks Cnty. Prison, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (nonprecedential) (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)).  Thus, the court will address Moy's claims pursuant to the Eighth Amendment standard.

substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

### 1. *Defendants DeParlos, Shoemaker, and Barnes*

With respect to former Warden DeParlos, Warden Shoemaker, and Deputy Warden Barnes, it appears that Moy attempts to hold these defendants liable based on their supervisory roles. (See Doc. 8, at 1, alleging that defendants DeParlos, Shoemaker, and Barnes are "responsible for all defendants"). However, it is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, to the extent that Moy's deliberate indifference claim relies on a *respondeat superior* theory of liability against defendants DeParlos, Shoemaker, and Barnes, these claims will be dismissed.

Additionally, for purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., id. at 236-37 (citing Durmer, 991 F.2d at 69). Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named

defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. See Rode, 845 F.2d at 1207.

With respect to these nonmedical defendants, Moy fails to establish a viable claim. Defendant DeParlos is the former Warden of the Lycoming County Prison, defendant Shoemaker is the current Warden, and defendant Barnes is the Deputy Warden. They are not trained members of the medical staff subject to liability for an Eighth Amendment claim. Moy has not set forth any allegations that these corrections defendants provided him with medical care, refused to provide medical care, or prevented him from receiving medical care; nor has he established that these corrections defendants were aware of or acquiesced in purported Eighth Amendment violations. Because Moy was under the regular care of medical experts, the nonmedical defendants were justified in believing that he was in capable hands. See Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 69.

To the extent that Moy attempts to hold defendants DeParlos and Shoemaker liable based on their involvement in the grievance procedure, this claim also fails. The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as defendants DeParlos and Shoemaker are sued in their capacity for denying Moy's grievance, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis

for § 1983 liability); Cole v. Sobina, 2007 WL 4460617, at *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

### 2. *Defendant Entz*

Moy alleges that defendant Entz, in his role as supervisor, escorted Moy to the SMU after he was treated by medical for an allergic reaction he suffered after eating onions. (Doc. 1, at 9; Doc. 8, at 11). Moy has failed to establish that defendant Entz was personally involved in the alleged violation of his constitutional rights. To the extent that Entz is sued based on his supervisory role, this claim fails. Any attempt by Moy to hold defendant Entz liable for the actions of his subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold this defendant liable based on his supervisory role. See Rode, 845 F.2d at 1207. For these reasons, the allegations against Entz will be dismissed based on lack of personal involvement in the alleged wrongful conduct.

### 3. *Defendants Poorman, Murphy, Dosvack, and Glover*

Moy asserts that his Eighth Amendment rights were violated when defendant Poorman ordered the removal of a nebulizer machine from his cell, despite knowing he suffered from asthma. (Doc. 1, at 10; Doc. 8, at 2 ¶ 2). He claims that he was discriminated against because another inmate was allowed to keep a similar machine in a different cell. (Id.) He further asserts that defendant Poorman supervised "all defendants." (Doc. 8, at 9 ¶ 14).

Moy next alleges that defendant Murphy denied and delayed medical treatment during his confinement at the Lycoming County Prison. (Doc. 1, at 9).

With respect to defendant Dosvack, Moy alleges that she provided untimely treatment for an allergic reaction, she failed to treat him after he choked on a chicken bone and, after he had an allergic reaction to eating hidden onions, she treated him with Benadryl, and performed an oxygen test, but did not check his lungs. (Doc. 1, at 10; Doc. 8, at 4, ¶ 5; Doc. 8, at 11, ¶ 16). Moy also alleges that defendant Dosvack administered eye drops to his eye through the cell bars and, because she was not paying attention, she poked him in the eye, causing pain and infection. (Doc. 1, at 11; Doc. 8, at 7-8, ¶ 11).

Moy alleges that after he was assaulted by a fellow inmate, he was escorted to the medical department and treated by defendant Glover, who provided an ice pack and antibiotic ointment. (Doc. 1, at 11; Doc. 8, at 6). Moy further alleges that defendant Glover provided medical care approximately one hour after he had an allergic reaction to onions. (Doc. 1, at 10).

Lastly, Moy alleges that defendants Poorman, Murphy, Dosvack, and Glover administered eye drops without wearing gloves, they had dirt and bacteria on their fingers, and had painted finger nails, which contaminated the eye drops. (Doc. 8, at 13, ¶ 18). He alleges that the nurses' failure to wear gloves while dispensing the eye drops caused an infection, pain, and redness. (Id.)

At this stage of the litigation, where the court is limited to an assessment of the pleadings, the court must deny the motion to dismiss the claims against

11

defendants Poorman, Murphy, Dosvack, and Glover.  A review of the complaint reveals that Moy has made detailed factual assertions, alleging that these defendants removed a nebulizer machine from his cell, provided inadequate and untimely medical care, and administered eye drops without wearing gloves, causing pain and infection.  The court finds that these factual recitals are sufficient to state a viable Eighth Amendment claim.

### B.     Monell Liability[3]

A municipality may be held liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such deprivation."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 692).  Thus, a plaintiff seeking to impose constitutional liability on a municipality must meet the difficult burden of proving that "action pursuant to official municipal policy" caused their injury.  Monell, 436 U.S. at 691, 694.  This requires the plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," Connick, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, Berg v. Cty. of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

---

[3] Although Moy does not title his claim as a Monell claim, defendants address these allegations in their motion to dismiss as a Monell claim because Moy sets forth policy-based claims.

Additionally, the absence of a policy may provide the basis for a <u>Monell</u> claim if sufficiently pled. In <u>Natale</u>, the Third Circuit determined that a prison with "no policy ensuring that an inmate having need of medication for a serious medical condition would be given that medication during the first 72 hours of . . . incarceration" was a "'particular[ly] glaring omission' in a program of medical care." <u>Natale</u>, 318 F.3d at 584-85 (quoting <u>Brown</u>, 520 U.S. at 410-11).

Moy alleges that defendants violated various prison policies and procedures. (Doc. 8, at 7-8, 14). He asserts that defendants violated prison policy by failing to promptly refer him to an eye doctor, and that the defendant nurses violated prison rules and procedures by administering eye drops without wearing gloves. (<u>Id.</u>) Moy claims that the alleged deficiency in his medical treatment is the result of defendants' failure to follow prison policies. Moy adequately claims that defendants failed to follow prison policies and procedures when rendering medical treatment to him. In light of these allegations, the motion to dismiss Moy's <u>Monell</u> claim will be denied.

## IV. <u>Dr. Keenan's Motion</u>

### A. **Legal and Factual Considerations Preclude a Finding at this Time that Dr. Keenan was not a State Actor**

As a threshold matter, Dr. Keenan argues that the section 1983 claim against him fails because Moy has not alleged any facts to indicate that he was a state actor. (Doc. 32, at 6-8). In support of this argument, Dr. Keenan asserts that Moy failed to allege that he ever had any contact or involvement with Moy at the prison, and

13

there are no facts to suggest that Dr. Keenan had any role at, or on behalf of, the prison. (Id.)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013). A private party may be regarded as a "a federal actor . . . under one of three interrelated theories of government action: (i) the 'public function' test, (ii) the 'close nexus' test and (iii) the 'symbiotic relationship' test." Brown v. Philip Morris Inc., 250 F.3d 789, 801 (3d Cir. 2001). Under any test, "[t]he inquiry is fact-specific." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). In making this very "fact-specific" state action determination "the focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation." Kach v. Hose, 589 F.3d 626, 649 (3d Cir. 2009).

With respect to medical services provided to inmates, it is clear that private physicians who are contracted to provide health care services inside prison walls will be considered state actors. In West v. Adkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) the Supreme Court expressly extended § 1983 liability to private physicians who contract to provide medical services inside prisons. The West Court rejected a claim that this contractual relationship was insufficient to make the private doctors state actors, and held that:

14

> The fact that the State employed [the doctor] pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [a doctor]; and respondent [doctor] voluntarily assumed that obligation by contract.

West, 487 U.S. at 55-56.

However, it is unsettled whether a doctor who works for a private medical facility can nonetheless be considered a state actor for having treated a prisoner. Compare Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994) (doctor considered state actor) with Nunez v. Horn, 72 F. Supp. 2d 24 (N.D.N.Y. 1999) (doctor not considered a state actor). See also Collyer v. Darling, 98 F.2d 211 (6th Cir. 1996) (doctor who examined state employee only once was not a state actor by virtue of having performed that examination). Many courts have thus held that the issue of whether a private physician's actions amount to state action for purposes of 42 U.S.C. § 1983 liability may not be resolved on a motion to dismiss, but rather requires development of a factual record. See, e.g., Rodriguez v. Plymouth Ambulance, 577 F.3d 816 (7th Cir. 2009) (reversing screening dismissal of complaint on state action grounds and calling for factual development); Tatsch-Corbin v. Feathers, 561 F.Supp.2d 538 (W.D. Pa. 2008) (denying motion to dismiss private physician on state

15

action grounds); see also Kach, 589 F.3d at 646 (noting that the state action inquiry is "fact-specific").

Moy alleges that all defendants were acting under color of state law, Dr. Keenan is the head prison doctor, and that Dr. Keenan denied his previously prescribed eye drops. (Doc. 8, at 1-4, 7, 9, 12, 14). Viewing the complaint in the light most favorable to Moy, the court concludes that Moy adequately alleges that Dr. Keenan is a state actor. The motion to dismiss Dr. Keenan on state action grounds will be denied.

### B. Deliberate Indifference to Medical Needs

Moy alleges that Dr. Keenan, as head prison doctor with decision making authority over medical treatment at the Lycoming County Prison, violated federal law when he was deliberately indifferent to his serious medical needs. (Doc. 8, at 1). Prison medical personnel may be found to have acted with deliberate indifference where they "prevent[ed] an inmate from receiving recommended treatment for serious medical needs." Lanzaro, 834 F.2d at 346-47. Moy can also establish deliberate indifference by alleging facts showing that Dr. Keenan "den[ied] reasonable requests for medical treatment . . . and such denial expose[d] [him] to undue suffering or the threat of tangible residual injury." Id. If the alleged inadequate care "was a result of an error in medical judgment," then Moy's claims must fail. Durmer, 991 F.2d at 69. If, however, the failure to provide adequate care was deliberate, and motivated by non-medical factors, then Moy's claims are actionable.

16

Moy sufficiently alleges deliberately indifferent conduct by Dr. Keenan. Moy asserts that he arrived at the Lycoming County Prison with three different prescription eye drops to treat a detached retina. (Doc. 1, at 9; Doc. 8, at 2). Moy alleges that Dr. Keenan refused to provide his prescribed eye drops. (Doc. 8, at 2). Without the eye drops, Moy alleges that his eye became infected, painful, and red. (Id.) In accepting all facts alleged in the complaint as true, and construing them in the light most favorable to Moy, the court finds that the complaint adequately alleges a claim against Dr. Keenan in violation of Moy's constitutional rights. Therefore, the court will deny Dr. Keenan's motion to dismiss.

## V. Conclusion

For the reasons set forth above, the Lycoming County defendants' motion (Doc. 30) will be granted in part and denied in part. The motion (Doc. 31) filed on behalf of Dr. Keenan will be denied. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 5, 2019