## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYREE TYQUAN MOY,** | : | **CIVIL ACTION NO. 1:18-CV-1575** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DOCTOR KEENAN, KIM POORMAN,** | : | |
| **MAELYNNE MURPHY, ERIN** | : | |
| **DVORSCAK, IESHA LEATHERBURY-** | : | |
| **GLOVER,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Tyree Tyquan Moy ("Moy"), an inmate confined at the Lycoming County Prison, in Williamsport, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983 raising an Eighth Amendment inadequate medical care claim. (Doc. 1). Moy subsequently filed an amendment to the complaint. (Doc. 8). The remaining defendants are Kim Poorman, registered nurse ("RN"), Maelynne Murphy, licensed practical nurse ("LPN"), Erin Dvorscak, LPN, and Iesha Leatherbury-Glover, LPN (collectively, the "nurse defendants"), and William Keenan, M.D. ("Dr. Keenan"). Before the court are two Rule 56 motions (Docs. 113, 116) filed by the nurse defendants and Dr. Keenan, respectively. For the reasons set forth below, the court will grant each pending motion.

## I.   <u>Factual Background & Procedural History</u>[1]

On August 8, 2018, Moy commenced this action against the nurse defendants, Dr. Keenan, and other prison employees.  (Doc. 1).  On August 22, 2018, Moy filed a supplement to the complaint.  (Doc. 8).  At all relevant times, Moy was housed at the Lycoming County Prison.  (Doc. 1 at 4).  Moy alleges that defendant Dr. Keenan deprived him of three prescription eye drops, denied him access to nebulizer asthma-related breathing treatments, and did not permit him to have a nebulizer machine in his cell.  He further alleges that the nurse defendants provided inadequate medical care by denying and delaying medical treatment and ordered the removal of a nebulizer machine from his cell.

By memorandum and order dated September 5, 2019, the court dismissed certain claims and defendants from this case, specified the claims against the remaining nurse defendants, and denied Dr. Keenan's motion to dismiss.  (Docs. 51, 52).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statements of material facts and supporting exhibits.  (Docs. 114, 117).  Moy did not file a response to defendants' statements of material facts.  The court accordingly deems the facts set forth by defendants to be undisputed.  See LOCAL RULE OF COURT 56.1; see also Doc. 130 ¶ 3 (advising Moy that failure to file responsive statements of material facts would result in the facts set forth in defendants' statements of material facts being deemed admitted).

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2]  (Docs. 113, 116).  Moy did not oppose either motion and the time for responding has now passed.[3]  The motions are ripe for disposition and deemed unopposed pursuant to Local Rule 7.6.

## II.   <u>Legal Standard</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> Fed. R. Civ. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(a), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F.Supp.2d at 315.

---

[2] Because defendants raised the issue of exhaustion of administrative remedies, the court notified the parties that it would consider exhaustion in its role as factfinder in accordance with <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018) and <u>Small v. Camden Cnty.</u>, 728 F.3d 265 (3d Cir. 2013).  (Doc. 138).

[3] Moy was directed to file briefs in opposition to defendants' motions and was admonished that failure to file opposition briefs would result in defendants' motions being deemed unopposed.  (Doc. 130) (citing M.D. Pa. Local Rule Of Court 7.6); (<u>see also</u> Doc. 6, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

## III.    Nurse Defendants' Rule 56 Motion

### A.    Statement of Undisputed Facts

Moy claims that on December 13, 2017, he inhaled smoke or fumes as a result of maintenance work that was performed in his cell block, and that medical staff did not treat his asthma or bronchitis for a period of two weeks.  (Doc. 114 § 1).  The record reflects that on December 14, 2017 at approximately 4:15 a.m., Moy was assessed at his cell by nurse Agnoni after he complained of shortness of breath.  (Doc. 114 ¶ 5).  Moy's oxygen saturation level was 98% on room air, his pulse was 64, and he had no shortness of breath, no wheezing, and he was calm and not in any distress.  (Id. ¶ 6).  Later that day, at approximately 6:25 p.m., Moy requested a breathing treatment from defendant nurse Leatherbury-Glover after he refused his medications.  (Id. ¶ 7).  Moy was not in medical distress at the time of evening medication pass.  (Id. ¶ 8).  At 7:25 p.m., nurse Leatherbury-Glover requested that Moy be brought to the medical department for a breathing treatment.  (Id. ¶ 9).  Moy refused a breathing treatment and stated he did not need it that night.  (Id. ¶ 10).

On December 15, 2017, nurse Leatherbury-Glover again assessed Moy.  (Id. ¶ 11).  Moy had no complaints regarding shortness of breath, coughing blood, or vomit.  (Id. ¶ 12).  On December 16, 2017, nurse Leatherbury-Glover again assessed Moy.  (Id. ¶ 13).  Moy had no complaints of difficulty breathing, coughing blood, shortness of breath, or emesis.  (Id. ¶ 14).  Also on December 16, 2017, Moy complained in an inmate request that he inhaled toxic fumes during maintenance work in his cell block on December 13, 2017.  (Id. ¶ 15).  Brad Shoemaker, who was

Deputy Warden at the time, contacted the prison maintenance department and was advised that the work that was done on K-Block on December 13, 2017 did not involve anything toxic.  (Id. ¶ 16).  On December 17, 2017, nurse Leatherbury-Glover assessed Moy for the fourth day in a row.  (Id. ¶ 17).  Moy had no complaints of shortness of breath, coughing blood, or emesis.  (Id. ¶ 18).

On December 18, 2017, Moy was treated by a prison physician but made no complaints regarding smoke inhalation and did not complain about his breathing. (Id. ¶ 19).  Also on December 18, 2017, defendant nurse supervisor Poorman responded to Moy's inmate request about toxic fumes as follows: "The maintenance department was contacted about these complaints related to the work they were doing in K block.  There was nothing toxic involved."  (Id. ¶ 20).

At his deposition, Moy testified that his only injury regarding this claim was dizziness, and he stated that he has asthma and bronchitis.  (Id. ¶ 21).  Moy reported a history of asthma and bronchitis at the time of his commitment to the prison on November 29, 2017.  (Id. ¶ 22).  Moy has provided no evidence that those conditions worsened as a result of the December 13, 2017 incident.  (Id. ¶ 23).

On December 16, 2017, a nebulizer machine was placed in Moy's cell for use as needed.  (Id. ¶ 24).  Moy claims that nurse supervisor Poorman requested that correctional staff remove the nebulizer machine from his cell, causing intentional infliction of emotional distress.  (Doc. 114 § 2).  On December 20, 2017, the nebulizer machine was removed from Moy's cell due to misuse.  (Id. ¶ 25).  Although a nebulizer machine was no longer in Moy's cell, a nebulizer treatment was always available to him if a nursing or medical assessment indicated that he needed a

treatment.  (Id. ¶ 26).  On December 20, 2017 at approximately 11:53 p.m., nurse

Hoover[4] examined Moy after he requested a breathing treatment.  (Id. ¶ 27).  When

nurse Hoover arrived at Moy's cell, he was sitting on the floor playing checkers with

his cellmate.  (Id. ¶ 28).  His oxygen saturation level was 95% on room air, he had no

difficulty speaking, and was not in any distress.  (Id. ¶ 29).  Based on this

assessment, nurse Hoover determined that Moy did not need a nebulizer treatment

at that time.  (Id. ¶ 30).

On December 29, 2017, Moy presented to the medical department with

complaints of shortness of breath.  (Id. ¶ 31).  Moy took a shower before walking to

the prison medical department.  (Id. ¶ 32).  Nurse supervisor Poorman assessed Moy

and noted that he was in no acute distress.  (Id. ¶ 33).  His oxygen saturation was

96% on room air and his lungs had good air movement.  (Id. ¶ 34).  However, nurse

supervisor Poorman assessed few rhonchi in Moy's lung bases and noted that he

was not cooperative with deep breaths during auscultation.  (Id. ¶ 35).  Based on

this assessment, nurse supervisor Poorman determined that Moy should receive a

nebulizer treatment.  (Id. ¶ 36).

Nurse supervisor Poorman reviewed at least three of Moy's grievances

regarding his nebulizer machine and nebulizer treatments.  (Id. ¶ 37).  Upon review

of the medical chart, nurse supervisor Poorman determined that Moy requested a

breathing treatment thirteen times between December 6, 2017 and June 7, 2018,

and that each time he was assessed by a nurse.  (Id. ¶ 38).  Moreover, Moy refused a

---

[4] Nurse Hoover was voluntarily dismissed from this action on February 18,
2021.  (See Doc. 82).

breathing treatment four times when approached by a nurse to assess him.  (Id.
¶ 39).  During this timeframe, Moy was evaluated twice by a medical doctor for
breathing issues, and both times his evaluation was within normal limits.  (Id. ¶ 40).
On June 7, 2018, Moy's nebulizer treatments were discontinued by a medical doctor.
(Id. ¶ 41).

At his deposition, Moy acknowledged that the removal of the nebulizer
machine from his cell did not mean that he was precluded from receiving nebulizer
treatments.  (Id. ¶ 42).  Moy also acknowledged that he received nebulizer
treatments after the machine was removed from his cell.  (Id. ¶ 43).  Moy testified
that he cannot remember how, if at all, he was injured by the removal of the
nebulizer machine from his cell.  (Id. ¶ 44).

Moy reported a food allergy to onions, which was documented on his medical
assessment upon commitment.  (Id. ¶ 45).  Generally, when Moy eats onions, he can
become short of breath and his throat can swell.  (Id. ¶ 46).  At his deposition, Moy
testified that he only went to a hospital once due to an allergic reaction to onions.
(Id. ¶ 47).  This hospital visit was a brief emergency department visit in Philadelphia
in 2015 or 2016.  (Id.)

Moy claims that, on January 11, 2018, he ate onions at 11:35 a.m. hidden in
his food, and that his treatment for a severe allergic reaction was delayed for
approximately one and one-half hours.  (Id. ¶ 48; Doc. 8 at 4).  The record reflects
that Moy was seen in the medical department less than one hour after he allegedly
ate onions on January 11, 2018.  (Doc. 114 ¶ 49).  Warden Brad Shoemaker reviewed
security video of Moy's movement to and from the prison medical department on

January 11, 2018 and determined that Moy was sent to the medical department at 12:28 p.m. and remained there until 1:22 p.m.  (Id. ¶ 50).  On January 11, 2018, defendant nurse Dvorscak did not report to work until 2:00 p.m., and would not have been present at the prison when Moy was seen in the medical department between 12:28 p.m. and 1:22 p.m.  (Id. ¶ 51).  According to the medical records, nurse Dvorscak never saw or treated Moy on January 11, 2018.  (Id. ¶ 52).  If nurse Dvorscak had seen or treated Moy, it would be noted in the medical chart.  (Id. ¶ 53).  Instead, Moy was seen by nurse Agnoni.  (Id. ¶ 54).  Moy testified that he did not name nurse Agnoni as a defendant in this lawsuit because he liked her and thought that she treated him well.  (Id. ¶ 55).  On January 11, 2018, nurse Agnoni assessed Moy in the prison medical department for his complaint about eating onions at lunch.  (Id. ¶ 56).  He was evaluated for approximately 60 minutes.  (Id. ¶ 57).  During that time, he had no swelling, no rash, and was in no distress.  (Id. ¶ 58).  Moy was treated with Benadryl.  (Id. ¶ 59).  At his deposition, Moy acknowledged that he received medical treatment, including Benadryl, after he allegedly ate onions on January 11, 2018.  (Id. ¶ 60).  When Moy was returned to his cell from the prison medical department, he had no complaints.  (Id. ¶ 61).  At his deposition, Moy could not describe any damages or injuries as a result of this incident.  (Id. ¶ 62).

Moy claims that defendant nurse Dvorscak intentionally denied medical attention after a chicken bone in his lunch got caught in his throat.  (Doc. 114 § 4).  The record reflects that on January 21, 2018, at approximately 2:25 p.m., nurse Dvorscak received a call from a correctional officer that Moy had asked for a

breathing treatment. (Id. ¶ 63). The correctional officer informed nurse Dvorscak that Moy was in no distress and showed no signs or symptoms of shortness of breath. (Id. ¶ 64). After lockdown ended at 3:30 p.m., Moy was brought to the medical department for a breathing treatment. (Id. ¶ 65). Moy was assessed by nurse Dvorscak and had no complaints at that time. (Id. ¶¶ 66, 67). His oxygen saturation was at 97% on room air and he showed no signs or symptoms of shortness of breath. (Id. ¶¶ 67, 68). Later that day, nurse Dvorscak became aware that Moy claimed he choked on a chicken bone that was in his lunch. (Id. ¶ 69). Nurse Dvorscak documented that Moy was not complaining of blood, pain, throat soreness, or swallowing a chicken bone when he was in the medical department after lunch regarding his request for a breathing treatment. (Id. ¶ 70). Although Moy complained that he had been bringing up blood from having a chicken bone in his throat, nurse Dvorscak did not observe any bleeding. (Id. ¶ 71). Moy had no signs or symptoms of distress while in the medical department after the alleged incident with the chicken bone. (Id. ¶ 72). At his deposition, Moy testified that he did not remember any treatment from nurse Dvorscak on January 21, 2018 and did not testify as to any damage or injury because of this incident. (Id. ¶¶ 73, 74).

Moy claims that on March 3, 4, 5, 6, 7, 8, and 9, 2018, nurse Poorman administered eye drops through his cell gate but was not wearing gloves. (Doc. 114 § 5). Moy had been prescribed various eye drops by his treating ophthalmologists at Geisinger Medical Center. (Id. ¶ 75). His eye drops were administered at times by prison nurses, and at times self-administered by Moy. (Id. ¶ 76). According to the medical records, on March 6, 2018, March 8, 2018, and March 9, 2018 at

approximately 8:00 a.m., nurse supervisor Poorman administered prednisolone acetate and atropine sulphate eye drops to Moy.  (Id. ¶ 77).  Another nurse administered Moy's eye drops in the evening on those dates.  (Id. ¶ 78).  At the deposition, nurse supervisor Poorman was only asked one question about giving eye drops without wearing gloves; she testified that was normal procedure.  (Id. ¶ 79).  There is no county or prison policy that requires wearing gloves when administering eye drops to inmates.  (Id. ¶ 80).  When administering eye drops, the nurses' hands do not touch the inmate's eye and, thus, there is no opportunity to transmit infection.  (Id. ¶ 81).  Moy could have administered the eye drops himself and did so on numerous occasions.  (Id. ¶ 82).  Moy testified that the only alleged injury regarding these incidents was an eye infection.  (Id. ¶ 83).  He testified that he did not remember having an eye infection on or after March 2018.  (Id. ¶ 84).

On June 8, 2018, July 19, 2018, and September 12, 2018, Moy was evaluated by an ophthalmologist at Geisinger Medical Center.  (Id. ¶ 85).  No eye infections or new issues of any kind were diagnosed by the ophthalmologist at any of these visits to Geisinger Medical Center.  (Id. ¶ 86).  Moy was never diagnosed with any eye infection during his commitment at the prison.  (Id. ¶ 87).

The Lycoming County Prison has an established grievance policy which is contained in the Inmate Handbook.  (Id. ¶ 88).  The grievance policy contains a three-step process for the resolution of grievances: (1) the initial grievance, (2) an appeal to the Warden, and (3) a final appeal to the Prison Board.  (Id.)  Moy received a copy of the Inmate Handbook upon his commitment to the prison on November 29, 2017.  (Id. ¶ 89).  Moy never filed a grievance regarding his claim that prison

nurse supervisor Poorman allegedly administered eye drops without wearing gloves. (Id. ¶ 90). Because Moy did not file any grievances regarding these alleged incidents, the Deputy Warden, Warden, and County Prison Board were not provided an opportunity to address this claim. (Id. ¶ 91). The nurse defendants maintain that Moy failed to exhaust administrative remedies with respect to his claim that nurse supervisor Poorman allegedly administered eye drops while not wearing gloves on March 3-9, 2018. (Id. ¶ 92).

On May 7, 2018, Moy was involved in a fight with another inmate. (Id. ¶ 93). Nurse Leatherbury-Glover assessed Moy after the fight and made two notes in the medical record regarding this incident. (Id. ¶¶ 94, 95). Although Moy had a small scratch to his right cheek under his eye, and slight swelling to the side of his eye, Moy initially denied an ice pack. (Id. ¶ 96). Moy had no complaints of pain and had no concerns. (Id. ¶ 97). Moy later complained of pain and burning in his right eye. (Id. ¶ 98). Nurse Leatherbury-Glover assessed Moy's right eye again and observed a swollen lower eyelid and the corner eye was almost closed shut due to swelling. (Id. ¶ 99). Nurse Leatherbury-Glover also assessed the right eye and noted no redness, no bleeding, and swelling only to the area where Moy was hit. (Id. ¶ 100). Moy was offered an ice pack again, which he accepted this time. (Id. ¶ 101). Moy was provided medication and eye drops and expressed no other concerns. (Id. ¶ 102). Nurse Leatherbury-Glover documented Moy's demand to be seen by a doctor. (Id. ¶ 103). The following day, on May 8, 2018, defendant nurse Murphy treated Moy for complaints of right eye pain and swelling related to a fight the day before. (Id. ¶ 104). His right eye was swollen and red, but there was no bleeding or drainage.

(Id. ¶ 105). Moy was already receiving eye drops and Motrin that day, and nurse Murphy treated his pain and swelling with an ice pack for 24 hours. (Id. ¶ 106).

In May 2018, Moy was receiving eye drops twice per day, and Motrin three times per day. (Id. ¶ 107). Moy was offered Motrin 400 mg three times per day in the days and weeks after the inmate-on-inmate fight on May 7, 2018, some of which he refused. (Id. ¶ 108). On May 8, 2018, Moy refused Motrin 400 mg at 8:00 a.m., but received it at 12:00 p.m. and 6:00 p.m. (Id. ¶ 109). Nurse Murphy administered the 6:00 p.m. dose of Motrin to Moy. (Id. ¶ 110). At his deposition, Moy acknowledged that he was treated at the prison medical department with an ice pack and antibiotic ointment for a scratch under his eye. (Id. ¶ 111). When asked how he was injured as a result of his medical care following this incident, Moy testified that his injury from the fight was not properly assessed. (Id. ¶ 112).

Following this incident, Moy was seen by an ophthalmologist at Geisinger Medical Center on June 8, 2018, July 19, 2018, and September 12, 2018. (Id. ¶ 113). At his deposition, Moy acknowledged that he was seen by an ophthalmologist at Geisinger Medical Center on the dates identified in his medical records. (Id. ¶ 114).

On May 13, 2018, nurse Dvorscak went to Moy's cell to administer eye drops. (Id. ¶ 115). After successfully administering the first eye drop, nurse Dvorscak was about to administer a second drop when Moy claimed that he had been poked in the eye. (Id. ¶ 116). Nurse Dvorscak responded that she had not gotten close enough to Moy's eye to make contact with him. (Id. ¶ 117). Defendants maintain that if nurse Dvorscak contacted the surface of Moy's eye with the tip of the eye drop bottle, it was an accident and not intentional or deliberate. (Id. ¶ 118). Nurse Dvorscak

brought Moy to the medical department for assessment.  (Id. ¶ 119).  Moy

complained that his eye felt irritated or scratched.  (Id. ¶ 120).  Moy had no swelling,

no scratches, no redness, or anything out of the ordinary regarding his eye.  (Id.

¶ 121).  Moy was already taking Motrin at the time and had an appointment with the

prison physician scheduled for May 17, 2018.  (Id. ¶ 122).  On May 17, 2018, Moy saw

a doctor at the prison for a vision recheck.  (Id. ¶ 123).  On May 24, 2018, Dr. Keenan

requested that Moy be seen at Geisinger Ophthalmology.  (Id. ¶ 124).  On June 8,

2018, July 19, 2018, and September 12, 2018, Moy was seen at Geisinger

Ophthalmology.  (Id. ¶ 125).  At his deposition, Moy testified that he did not

remember being seen in the prison medical department or receiving medical

treatment on May 13, 2018.  (Id. ¶ 126).  Moy testified he did not know how, if at all,

he was injured or harmed as a result of this incident.  (Id. ¶ 127).

Moy never filed a grievance regarding his claim that he was poked in the eye

by nurse Dvorscak on May 13, 2018.  (Id. ¶ 128).  Because Moy did not file a

grievance regarding this alleged incident, the Deputy Warden, Warden, and County

Prison Board were not provided an opportunity to address this claim.  (Id. ¶ 129).

The nurse defendants maintain that Moy failed to exhaust the administrative

remedies made available to him relative to his claim that he was poked in the eye by

nurse Dvorscak on May 13, 2018.  (Id. ¶ 130).

On June 14, 2018 at approximately 9:45 p.m., nurse Leatherbury-Glover

examined Moy after he complained of another incident of alleged allergic reaction

to onions.  (Id. ¶ 132).  Nurse Leatherbury-Glover assessed Moy's oxygen saturation

level at 100% on room air, noted that his pulse was normal, there were no signs of

respiratory distress or allergic reaction, and he was in no distress.  (Id. ¶¶ 133, 134).
Moy had been speaking in a raspy voice.  (Id. ¶ 135).  However, as Moy began to
curse and raise his voice, nurse Leatherbury-Glover noted that his raspy voice
returned to normal, and he continued to yell with a clear voice.  (Id. ¶¶ 136, 137).
Nurse Leatherbury-Glover documented no swelling to oral area, no hives, and no
respiratory distress.  (Id. ¶ 138).  Following assessment, nurse Leatherbury-Glover
determined that Moy required no medical treatment.  (Id. ¶ 138).

That night at approximately 11:00 p.m., nurse Hoover also assessed Moy.  (Id.
¶ 139).  Moy was in no visible distress, his oxygen saturation level was 97% on room
air, and his pulse was 70.  (Id. ¶ 140).  Moy had no swelling of his lips, no hives, no
rash, he did not complain of tongue or throat swelling, and did not have any
difficulty speaking.  (Id. ¶¶ 143, 144).  Nurse Hoover did not assess any clinical
reason to give Benadryl.  (Id. ¶ 145).  At his deposition, Moy acknowledged that
nurse Leatherbury-Glover assessed him after the incident and treated him with
Benadryl.  (Id. ¶ 146).  Also at the deposition, the only injuries Moy described
relative to this claim were a tight chest, sore throat, and trouble standing.  (Id.
¶ 147).

On or about June 25, 2018, Moy submitted Grievance 06-11 regarding, *inter
alia*, his claim of an allergic reaction to onions on June 14, 2018.  (Id. ¶ 148).  Upon
review, Deputy Warden Ryan Barnes timely denied Grievance 06-11 on the basis
that Moy's claim of inadequate health care was unfounded.  (Id. ¶ 149).  Moy did not
appeal the denial of Grievance 06-11 to the Warden, as required by step 2 of the
Inmate Handbook's grievance procedure.  (Id. ¶ 150).  Because Moy did not file any

14

appeal of the denial of Grievance 06-11, the Warden and the County Prison Board were not provided an opportunity to address this claim. (Id. ¶ 151). The nurse defendants maintain that Moy failed to exhaust administrative remedies with respect to his claim regarding treatment by nurse Leatherbury-Glover for an alleged allergic reaction on June 14, 2018. (Id. ¶ 152).

Moy claims that, on June 27, 2018, defendant Dvorscak failed to check his lungs after he once again, allegedly, ate onions. (Doc. 114 § 9). In his amended complaint, he admits that the nurse Dvorscak provided Benadryl and assessed his blood oxygenation. (Id.) The record reflects that on June 27, 2018, nurse Dvorscak assessed Moy after he complained to a correctional officer about an allergic reaction to onions. (Id. ¶ 153). Moy was escorted to the medical department via wheelchair for assessment. (Id. ¶ 154). Moy talked with a forced, raspy voice and requested a breathing treatment for acid reflux. (Id. ¶ 155). Upon assessment by nurse Dvorscak, Moy's oxygen saturation was 100% on room air, and his pulse was 72. (Id. ¶ 156). Nurse Dvorscak assessed Moy's lungs and determined that his lungs sounded clear. (Id. ¶ 157). Nurse Dvorscak gave him Benadryl. (Id. ¶ 158). During this assessment, a correctional officer found a pill that appeared to be Gabapentin hidden in Moy's sock. (Id. ¶ 159). An argument ensued and Moy's voice was fine. (Id. ¶ 160). At his deposition, Moy acknowledged that nurse Dvorscak assessed him after he ate onions on this date and treated him with Benadryl. (Id. ¶ 161). Also at the deposition, Moy could not state how he might have been injured or harmed as a result of this incident. (Id. ¶ 162).

Moy never filed a grievance regarding his claim of alleged inadequate medical care by nurse Dvorscak on June 27, 2018.  (Id. ¶ 163).  Because Moy did not file a grievance regarding this alleged incident, the Deputy Warden, Warden, and County Prison Board were not provided an opportunity to address this claim.  (Id. ¶ 164).  The nurse defendants maintain that Moy failed to exhaust the available administrative remedies regarding his claim of alleged inadequate medical care by nurse Dvorscak on June 27, 2018.  (Id. ¶ 165).

Moy claims that at unspecified times, defendant Murphy denied medical treatment and delayed treatment for his serious medical need.  (Doc. 114 § 10).  At his deposition, Moy was unable to identify any date, time, or circumstance in which nurse Murphy allegedly provided inadequate medical care.  (Id. ¶ 166).  Moy was unable to describe any serious medical condition for which care was denied or delayed by nurse Murphy.  (Id. ¶ 167).  Moy could not identify or describe any injuries or damages causally related to any of nurse Murphy's actions.  (Id. ¶ 168).  Moy testified that the details regarding this claim are contained in an unspecified grievance that he testified was filed.  (Id. ¶ 169).  Moy never submitted a grievance regarding any claim of alleged denial or delay of medical care by nurse Murphy.  (Id. ¶ 170).  Because Moy did not file a grievance regarding an alleged delay or denial of medical care by nurse Murphy, the Deputy Warden, Warden, and County Prison Board were not provided an opportunity to address this claim.  (Id. ¶ 171).  The nurse defendants maintain that Moy failed to exhaust the administrative remedies relative to any claims regarding alleged denial or delay of medical care by nurse Murphy.  (Id. ¶ 172).

Moy claims that each nurse defendant, at unspecified times, administered eye drops with painted fingernails and while not wearing gloves which caused pain, infections in his eyes, and violated prison policy. (Doc. 114 § 11). There is no county or prison policy that prohibits nail polish or requires nurses to wear gloves when administering eye drops. (Id. ¶ 173). Moy did not provide any specific facts regarding this claim, other than his personal belief that the failure to wear gloves while administering eye drops, and doing so with fingernail polish, can cause eye irritation. (Id. ¶ 174). Moy was never diagnosed with an eye infection during his commitment at the prison. (Id. ¶ 175). He was seen by an ophthalmologist on multiple occasions while incarcerated at the prison. (Id. ¶ 176). At his deposition, Moy testified that he did not know which, if any, prison policy was allegedly violated by any defendant. (Id. ¶ 177). The nurse defendants are not aware of any instances of an inmate who developed an eye infection as a result of a nurse administering eye drops with painted fingernails or without wearing gloves. (Id. ¶ 178).

Moy never submitted a grievance regarding his claim that prison nurse supervisor Poorman administered eye drops while wearing nail polish or without wearing gloves. (Id. ¶ 179). In early August 2018, Moy submitted a grievance regarding, *inter alia*, his claim that prison nurses Dvorscak, Leatherbury-Glover, Murphy, and Hoover allegedly wore nail polish and did not wear gloves while administering eye drops. (Id. ¶ 184). On August 7, 2018, Deputy Warden Ryan Barnes timely denied Grievance 08-01 on the basis that nursing staff was not violating any policy and that Moy had an eye appointment on July 19, 2018 and had no eye infection. (Id. ¶ 181). Moy did not appeal the denial of Grievance 08-01 to the

Warden, as required by step 2 of the Inmate Handbook's grievance procedure.  (Id. ¶ 182).  Because Moy did not appeal to the denial of Grievance 08-01, the Warden and the County Prison Board were not provided an opportunity to address this claim.  (Id. ¶ 183).  The nurse defendants maintain that Moy failed to exhaust his administrative remedies with respect to his claim that nurses Poorman, Dvorscak, Leatherbury-Glover, and Murphy treated him with eye drops while wearing nail polish and not wearing gloves.  (Id. ¶ 184).

### B.    Discussion

#### 1.    *Exhaustion of Administrative Remedies*

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); see also Nyhuis v. Reno, 204 F.3d 65,

68 (3d Cir. 2000) (holding that that PLRA's exhaustion requirement applies to Bivens claims).

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  See Nyhuis, 204 F.3d at 75-76.  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth, 206 F.3d 289 (3d Cir. 2000) aff'd, 532 U.S. 731 (2001); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008) (nonprecedential).

This broad rule favoring full exhaustion allows for a narrowly defined exception: if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with the exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to

excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002) (nonprecedential). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005) (nonprecedential), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate," <u>see</u> <u>Warman</u>, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. <u>See</u> <u>Harris</u>, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. <u>See</u> <u>Warman</u>, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. <u>See</u> <u>Casey v. Smith</u>, 71 F. App'x 916, 918 (3d Cir. 2003) (nonprecedential).

The Lycoming County Prison has an Inmate Grievance Policy that was in effect at all times relevant to the instant action. (Doc. 114 ¶¶ 88-89; Doc. 115 at 431-37). Under the policy, an initial grievance must be filed on a grievance form with the Deputy Warden. (Doc. 115 at 435). The Deputy Warden will then issue a

decision.  (Id.)  If the Deputy Warden denies the grievance, the inmate may file an appeal to the Warden.  (Id.)  Inmates who are dissatisfied with the response of the Warden have the right to appeal that decision to the Prison Board.  (Id.)  The Prison Board's decision is final.  (Id.)

During Moy's incarceration at the Lycoming County Prison, he never filed any grievance regarding his claim that nurse supervisor Poorman administered eye drops in March 2018 without wearing gloves, that nurse Dvorscak poked him in the eye on May 13, 2018, that nurse Dvorscak a failed to check his lungs after he ate onions on June 27, 2018, and that nurse Murphy denied and delayed care at an unspecified time.  It is undisputed that Moy failed to file for any administrative remedies with respect to these claims.

It is also undisputed that Moy failed to fully exhaust available administrative relief with regard to the following claims.  On June 25, 2018, Moy submitted Grievance 06-11 regarding his claim against nurse Leatherbury-Glover for her treatment of an alleged allergic reaction to onions on June 14, 2018.  Deputy Warden Ryan Barnes timely denied Grievance 06-11 and found that Moy's claim of inadequate health care was unfounded.  Moy did not appeal the denial of this grievance.

In August 2018, Moy submitted Grievance 08-01 regarding his claim that nurses Dvorscak, Leatherbury-Glover, and Murphy wore nail polish and did not wear gloves while administering eye drops, which included a Monell claim regarding a purported prison policy regarding wearing nail polish and gloves while administering eye drops to inmates.  On August 7, 2018, Deputy Warden Ryan

Barnes timely denied Grievance 08-01 on the basis that the nursing staff was not violating any policy, Moy had attended an eye appointment on July 19, 2018, and Moy had no eye infection.  Moy did not appeal the denial of this grievance.

The uncontroverted evidence reflects that Moy failed to appeal the denials of Grievances 06-11 and 08-01 to the Warden, as required by step 2 of the Lycoming County Prison's grievance procedure.  In light of the undisputed facts and relevant evidence of record, the court concludes that Moy has failed to produce any evidence to overcome the nurse defendants' summary judgment motion and cannot argue against summary judgment by merely relying on unsupported assertions, inferences based upon a speculation or conjecture, or unverified, conclusory allegations.  Under Rule 56, Moy was required to go beyond his pleadings with affidavits or the like in order to establish the existence of a genuine dispute of material fact.  See Celotex Corp., 477 U.S. at 324.  Because he has failed to do so, the court concludes that Moy has not properly exhausted the above-referenced claims, and the nurse defendants are entitled to the entry of summary judgment in their favor on these claims.

2.   *Deliberate Indifference to Medical Needs*[5]

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).   A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).   In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted).   A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer v. Brennan, 511 U.S. 825, 837 (1994).   A mere difference of opinion between

---

[5] Moy's claims are based on his status as a pretrial detainee.   Pretrial detainees may assert Section 1983 claims for inadequate medical care under the Fourteenth Amendment's substantive due process clause.   See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003); Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988).   "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." Natale, 318 F.3d at 581.   We will evaluate Moy's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment.   See id. at 581-82.

the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  See Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  See Rode, 845 F.2d at 1208.

With respect to Moy's inhalation of smoke on December 13, 2017, the undisputed evidence establishes that Moy was treated by a prison nurse immediately after the alleged incident.  His oxygen saturation level was 98% on room air, his pulse was 64, and he had no shortness of breath, no wheezing, and he

was calm and not in any distress.  Later that day, Moy was offered a breathing treatment, but he refused treatment.  On December 15, 16, and 17, 2017, Moy's breathing was assessed as normal.  On December 18, 2017, Moy was treated by a prison doctor and had no complaints about smoke or breathing.

When nurse supervisor Poorman ordered the removal of the nebulizer machine from Moy's cell on December 20, 2017, she explained that he was misusing the machine.  The undisputed evidence reflects that nebulizer treatments were always available to Moy, and he continued to receive treatments after the machine was removed from his cell.  The record also reflects that Moy refused breathing treatments on several occasions.

When Moy presented for treatment on January 11, 2018 after eating onions, nurse Agnoni conducted an examination and noted that he had no swelling, no rash, and was not in distress, and concluded that he should be treated with Benadryl.  The record is devoid of evidence that nurse Dvorscak had any personal involvement in Moy's medical care on January 11, 2018.

On January 21, 2018, Moy purportedly choked on a chicken bone.  On that day, nurse Dvorscak treated Moy in the medical department for a breathing treatment and Moy never mentioned that he choked on chicken bone, and she did not observe any bleeding or other signs and symptoms of distress.

On May 7, 2018, nurse Leatherbury-Glover examined Moy after he engaged in a fight and noted a scratch on his right cheek under his eye and slight swelling to the side of his eye.  Nurse Leatherbury-Glover offered Moy an ice pack, but he

refused it, and he did not have any complaints of pain or any other concerns at that time.  When Moy made additional complaints regarding his eye later that day, nurse Leatherbury-Glover again assessed him and noted eye swelling, but no redness or bleeding.  Moy was provided an ice pack and Motrin 400 mg.

The record demonstrates that, on each and every occasion noted, the nurse defendants rendered adequate medical attention and treatment based on Moy's symptoms, complaints, and tests, and provided him treatment options.  Moy's claims essentially amount to a "mere disagreement as to the proper medical treatment," which does not support a claim of deliberate indifference.  See Lanzaro, 834 F.2d at 346.  Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."  Pearson v. Prison Health Service, 850 F.3d 526, 535 (3d Cir. 2017).  There simply is no evidence, at any point during the various events and medical interactions, that the nurse defendants intentionally denied Moy medical treatment, delayed access to medical care, or interfered with any prescribed course of medical treatment.  Summary judgment will be entered in favor of the nurse defendants.

### 3.   *Monell* **Claim**

A municipality may be held liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such deprivation."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 692 (1978)).  Thus, a plaintiff seeking to impose constitutional liability on a municipality must

meet the difficult burden of proving that "action pursuant to official municipal policy" caused their injury.  Monell, 436 U.S. at 691, 694.  This requires the plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," Connick, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, Berg v. Cnty. of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

Additionally, the absence of a policy may provide the basis for a Monell claim if sufficiently pled.  In Natale, the Third Circuit determined that a prison with "no policy ensuring that an inmate having need of medication for a serious medical condition would be given that medication during the first 72 hours of . . . incarceration" constituted a "'particular[ly] glaring omission' in a program of medical care." Natale, 318 F.3d at 584-85 (quoting Brown, 520 U.S. at 410-11).

Moy alleges that the nurse defendants violated various prison policies and procedures.  (Doc. 8 at 7-8, 14).  He asserts that the nurse defendants violated prison policy by failing to promptly refer him to an eye doctor, and that the defendant nurses violated prison rules and procedures by administering eye drops while wearing nail polish and without wearing gloves.  (Id.)  Moy's claim in the form of a violation of a municipal policy under Monell fails.  Monell requires a plaintiff to plead the existence of a policy or lack thereof, a policymaker that effectuated said policy, and a constitutional violation whose "moving force" was the policy in question.  See Monell, 436 U.S. at 690-91, 694.  Not a single named defendant is a

policymaker effectuating an official policy which is the "moving force" behind the alleged constitutional violation under <u>Monell</u>.  <u>Cf.</u> <u>id.</u>  Additionally, the evidence reflects that there is no county or prison policy that prohibits nail polish or requires nurses to wear gloves when administering eye drops to inmates.  Summary judgment will be entered in favor of the nurse defendants on the <u>Monell</u> claim.

**IV.**   **<u>Defendant Keenan's Rule 56 Motion</u>**

**A.**   **Statement of Undisputed Facts**

At all relevant times, Dr. Keenan was the Medical Director of the Lycoming County Prison.  (Doc. 117 ¶ 4).  Regarding the claims asserted against Dr. Keenan, Moy alleges that Dr. Keenan was the "head prison doctor," and that Moy was either denied medical care or received inadequate medical care for (1) a significant pre-incarceration traumatic eye injury involving a detached retina, and (2) his asthma.  (<u>Id.</u> ¶ 6).  Moy alleges that Dr. Keenan acted with deliberate indifference to his serious medical needs in violation of his Constitutional rights.  (<u>Id.</u>)  Specifically, Moy alleges that he was denied access to prescription eye drops, that he was not permitted to keep a nebulizer in his cell, and that he was denied nebulizer treatments.  (<u>Id.</u> ¶ 7).

On August 15, 2017, prior to Moy's commitment to Lycoming County Prison, Moy sustained serious traumatic injuries to his right eye.  (<u>Id.</u> ¶ 8).  The right eye injuries included retinal detachment, multiple lacerations to the eyelid, and a ruptured globe.  (<u>Id.</u> ¶ 9).  On August 15, 2017, Dr. Matthew Koehler of Geisinger Medical Center operated to repair the ruptured globe and lacerations of the upper eyelid.  (<u>Id.</u> ¶ 10).  On August 15, 2017, Moy was discharged from Geisinger Medical

Center.  (Id. ¶ 11).  On August 16, 2017, Moy was assessed by Geisinger
Ophthalmology in the Eye Clinic.  (Id. ¶ 12).  On that date, Dr. Onishi prescribed
three prescription eye drops: Atropine (a pain reliever), Pred Forte (a steroid), and
Ocuflox (an antibiotic).  (Id. ¶ 13).  Moy filled all three of the eye drop prescriptions
on August 16, 2017.  (Id. ¶ 14).  The Atropine prescription of August 16, 2017 did not
include refills.  (Id. ¶ 15).  The Pred Forte prescription of August 16, 2017 had one
refill.  (Id. ¶ 16).  The Ocuflox prescription of August 16, 2017 had three refills.  (Id.
¶ 17).  Geisinger Medical Center records provided to the prison reflect that a new
Atropine prescription, without a refill, was called in to Weis Pharmacy on August
27, 2017.  (Id. ¶ 18).  Moy filled the August 27, 2017 Atropine prescription on
September 6, 2017.  (Id. ¶ 19).

On August 31, 2017, Moy was seen at the Geisinger Eye Clinic and reported
that he had run out of his prescription Ocuflox eye drops the day before.  (Id. ¶ 20).
On August 31, 2017, the prescription for Ocuflox was discontinued by Moy's
ophthalmologist.  (Id. ¶ 21).  Also on August 31, 2017, a vitrectomy surgery was
scheduled for September 5, 2017 to repair Moy's detached retina.  (Id. ¶ 22).  At the
August 31, 2017 appointment, Moy was seen by a physician assistant who noted that
he was using the prescription Pred Forte eye drops six times per day, as opposed to
four times per day.  (Id. ¶ 23).  There is no record that Moy was seen at Geisinger on
September 5, 2017, or on any date between the August 31, 2017 appointment and his
commitment to the Lycoming County Prison on November 29, 2017.  (Id. ¶ 24).

On September 14, 2017, Moy filled the August 27, 2017 Pred Forte and
Ocuflox prescriptions at Weis Pharmacy.  (Id. ¶ 25).  The Ocuflox prescription was

discontinued by Moy's ophthalmologist on August 31, 2017. (Id.) On October 18,

2017, Moy called his Geisinger ophthalmologist and requested a refill of Atropine

and Pred Forte. (Id. ¶ 26). The ophthalmologist's office called in a prescription to

Weis Pharmacy for both prescriptions on that date. (Id.) The October 18, 2017 Pred

Forte prescription included one refill and the Atropine prescription included no

refills. (Id. ¶ 27). There is no record of Moy filling either of the October 18, 2017

prescriptions at Weis Pharmacy prior to his incarceration on November 29, 2017.

(Id. ¶ 28).

Moy was committed to Lycoming County Prison on November 29, 2017. (Id.

¶ 29). Upon incarceration, Moy did not have any prescription medications with him.

(Id. ¶ 30). However, according to the Prison Medical Admission documentation

prepared by prison medical staff, Moy reported that he had prescriptions for three

types of eye drops. (Id. ¶ 31). Moy indicated that he used Weis Pharmacy. (Id.

¶ 32). At his deposition, Moy testified that he did not recall filling prescriptions at

any other pharmacy from August 2017 through November 2017. (Id. ¶ 33).

When inmates are admitted to the prison with prescription medications,

prison medical staff contacts the inmate's pharmacy to verify that the medications

are current. (Id. ¶ 34). Thus, consistent with prison policy and procedure, the

prison nurses contacted Weis Pharmacy to verify the status of Moy's eye medication

prescriptions. (Id. ¶ 35). It is charted in the Lycoming County Prison records that

Weis Pharmacy reported that Moy had only one available prescription: a

prescription for Pred Forte, but the medication was last filled by Moy on September

14, 2017, more than two months before his commitment to the prison. (Id. ¶ 36). It

was therefore determined that upon his commitment to the Lycoming County Prison on November 29, 2017, Moy had only one active prescription for Pred Forte eye drops.  (Id. ¶ 37).  Further, on November 29, 2017, the on-call prison physician, who is not a party to this lawsuit, issued a verbal order by phone which denied Pred Forte for Moy due to pre-incarceration non-compliance.  (Id. ¶¶ 38, 39).  Dr. Keenan co-signed that order.  (Id. ¶ 38).

On December 1, 2017, Moy was seen by nurse Hoover regarding right eye pain and discomfort.   (Id. ¶ 40).  Also on December 1, 2017, nurse Hoover requested Moy's Geisinger Medical Center medical records and Williamsport Hospital Emergency Room medical records.  (Id. ¶ 41).  On December 4, 2017, Moy requested his three eye drop prescriptions, and prison physician Dr. Jaussi, who is not a party to this action, noted that the prescriptions for the eye drops had not yet been confirmed by the pharmacy.  (Id. ¶ 42).

On December 4, 2017, Moy filed Grievance 12-08, alleging that he had not been provided his prescription eye drops, and had been told that the prescriptions were not current.  (Id. ¶ 43).  On December 10, 2017, Dr. Keenan ordered prison nurses to request Moy's ophthalmology records from Dr. Crabtree at Geisinger.  (Id. ¶ 44).  On December 16, 2017, Dr. Keenan charted that he had reviewed Moy's Geisinger Medical Center records and that Moy had not been seen at Geisinger since August 2017.  (Id. ¶ 45).  Also on December 16, 2017, Dr. Keenan ordered prison nurses to contact Geisinger Ophthalmology to determine if they wished to see Moy for a follow-up appointment.  (Id. ¶ 46).  On December 18, 2017, nurse Poorman charted that she had called Geisinger Ophthalmology, and was told that

prior to Moy's incarceration, he failed to appear for two scheduled surgeries and Geisinger Ophthalmology had attempted unsuccessfully to contact Moy several times to schedule follow-up treatment.  (Id. ¶ 47).  The Geisinger records confirmed the same.  (Id.)  Failure to appear for a scheduled surgery or pursue recommended follow-up care constitutes non-compliance with medical care and treatment.  (Id. ¶ 48).

On December 19, 2017, Geisinger Ophthalmology contacted the prison and scheduled a follow-up appointment for January 23, 2017, with Dr. Onishi, Moy's ophthalmologist.  (Id. ¶ 49).  Dr. Onishi did not order medications on December 19, 2017.  (Id. ¶ 50).  On December 21, 2017, nurse Poorman noted that she had again contacted Weis Pharmacy, which reported that Moy had two prescriptions for Atropine and Ofloxacin; however, neither prescription had been filled since September 2017.  (Id. ¶ 51).  Failing to fill and use prescription medications as prescribed constitutes non-compliance and misuse.  (Id. ¶ 52).

On January 2, 2018, Moy filed Grievance 1-03 alleging that he had not been given his prescription eye drops for a detached retina.  (Id. ¶ 53).  On January 15, 2018, Dr. Keenan examined Moy for complaints related to his asthma and right eye.  (Id. ¶ 54).  Dr. Keenan noted that an ophthalmology consult was scheduled.  (Id.)  Dr. Keenan did not order Ocuflox, Atropine, or Pred Forte in December 2017 or January 2018.  (Id. ¶ 55).  He based this decision on the information from Weis Pharmacy that Moy had not filled prescriptions for any eye drops since September 2017, a review of the Geisinger records, an examination of Moy, the nature of Moy's eye injury (a detached retina), and the fact that it appeared that Moy's

ophthalmologist had intended the use of Ocuflox, Atropine, and Pred Forte eye drops to be temporary.  (<u>Id.</u>)

Pred Forte has significant ophthalmologic contraindications for long-term use, including vision loss.  (<u>Id.</u> ¶ 56).  Therefore, it would not have been reordered or restarted without an order from Moy's ophthalmologist.  (<u>Id.</u>)  Ocuflox is a short-term antibiotic medication and Atropine is a short-term medication used to provide comfort.  (<u>Id.</u> ¶¶ 57, 58).  Thus, neither of these medications would have been reordered or restarted without an order from Moy's ophthalmologist.  (<u>Id.</u>)  Further, based on Geisinger Ophthalmology records, the Ocuflox prescription had been discontinued on August 31, 2017, and the medication was not medically indicated because Moy did not have signs or symptoms of an infection.  (<u>Id.</u> ¶ 59).

On January 23, 2018, Moy was seen at Geisinger Ophthalmology.  (<u>Id.</u> ¶ 60).  At that appointment, a vitrectomy was planned, but not scheduled.  (<u>Id.</u> ¶ 61).  Moy was not prescribed Atropine, Pred Forte, or Ocuflox at the January 23, 2018 ophthalmology appointment.  (<u>Id.</u> ¶ 62).  Instead, Moy was directed to use non-prescription artificial tears as needed, and to sleep with an eye patch.  (<u>Id.</u> ¶ 63).

On February 21, 2018, Moy was transported to Geisinger for a planned vitrectomy surgical procedure, to address the detached retina.  (<u>Id.</u> ¶ 64).  However, during pre-operative preparations, Moy refused to undergo the surgery, and he was immediately returned to the prison.  (<u>Id.</u>)

On February 22, 2018, prison medical staff received verbal orders from Geisinger ophthalmologist Dr. Steven J. Marks for prescriptions for Pred Forte and Atropine eye drops.  (<u>Id.</u> ¶ 68).  Lycoming County Prison Medication Administration

records show that Moy received eye medication, or it was offered and was denied by him, on a daily basis thereafter. (Id. ¶ 69). Moy was unable to remember what specific injuries, if any, he suffered as a result of not receiving eye drops, and did not produce any evidence of any injuries suffered. (Id. ¶ 67).

The Lycoming County Prison has an established grievance policy which is contained in the Inmate Handbook. (Id. ¶ 69). The grievance policy contains a three-step process for the resolution of grievances: (1) the initial grievance, (2) an appeal to the Warden, and (3) a final appeal to the Prison Board. (Id. ¶ 69). Moy received a copy of the Inmate Handbook upon his commitment to the Prison on November 29, 2017. (Id. ¶ 70).

On December 4, 2017, Moy filed Grievance 12-08 complaining that he had not been provided his prescription eye drops and that he was told that his prescriptions were not current. (Id. ¶ 71). On December 8, 2017, Deputy Warden Brad Shoemaker sought information from nurse Poorman about this medication. (Id. ¶ 72). On December 12, 2017, nurse Poorman advised that Moy's eye issue was known to prison medical staff, and that a physician did not approve of the eye drops upon commitment because Moy had not filled any eye drop prescriptions since September 2017. (Id.) Also on December 12, 2017, nurse Poorman reported that prison medical staff had faxed a release of information to Geisinger twice in an attempt to retrieve Moy's records. (Id. ¶ 73). On December 12, 2017, Deputy Warden Shoemaker denied Grievance 12-08 and noted that Moy's medications were not approved due to his non-compliance prior to incarceration, and that medical was waiting to receive Moy's records from Geisinger. (Id. ¶ 74). Moy appealed the

denial of Grievance 12-08 to Warden Kevin DeParlos.  (Id. ¶ 75).  On January 31, 2018, Warden DeParlos denied the appeal.  (Id. ¶ 76).  On February 23, 2018, the Prison Board received the third-level appeal of Grievance 12-08, along with other grievance appeals from Moy.  (Id. ¶ 77).  On March 8, 2018, the Prison Board denied Grievance 12-08.  (Id. ¶ 78).

On January 2, 2018, Moy filed Grievance 1-03 complaining that he had not received prescription eye drops for treatment of his detached retina.  (Id. ¶ 79).  Upon receiving Grievance 1-03, Deputy Warden Shoemaker requested details about Moy's medications from nurse Poorman.  (Id. ¶ 80).  Nurse Poorman explained that she had personally spoken to the pharmacy, who reported that Moy had been prescribed three different eye drops by his Geisinger ophthalmologist, that two of those prescriptions were last filled on September 14, 2017, and the third was filled on September 6, 2017, meaning "if he were using them as prescribed he should have had to refill them again prior to his incarceration date of 11/29."  (Id. ¶ 81).  On January 15, 2017, Deputy Warden Shoemaker denied Grievance 1-03 and explained that Moy's medications were reviewed by a physician and not approved, and that the prison had scheduled an appointment for Moy with his eye doctor.  (Id. ¶ 82).

On that same date, Moy appealed the denial of Grievance 1-03 to Warden DeParlos.  (Id. ¶ 83).  On January 31, 2018, Warden DeParlos denied the appeal of Grievance 1-03 and explained that Moy was seen by his eye doctor on January 23, 2018, and that the eye doctor suggested that Moy use artificial tears as needed and wear an eye shield while sleeping.  (Id. ¶ 84).  Warden DeParlos further commented that although Moy was provided an eye shield, he was non-compliant with wearing

it as directed.  (Id. ¶ 85).  Warden DeParlos also noted that the prison was awaiting a
date for a vitrectomy retinal repair surgery to be scheduled.  (Id. ¶ 86).  Moy
appealed the second denial of Grievance 1-03 to the Prison Board.  (Id. ¶ 87).  The
appeal was received on February 23, 2018.  (Id.)  The Prison Board denied
Grievance 1-03 because it was a medical-related issue that had previously been
reviewed and addressed.  (Id. ¶ 88).

On December 3, 2017, Moy presented to the medical department with
complaints related to his asthma and requested an inhaler.  (Id. ¶ 89).  Upon
assessment, it was noted that Moy was not in any distress and that pharmacy
records indicated that he had not filled his Albuterol nebulizer treatment
prescription since November 8, 2016, more than one year prior to his incarceration.
(Id.)  In December 2017, Moy was permitted to keep a nebulizer in his cell.  (Id.
¶ 90).  However, corrections officers subsequently removed the nebulizer from
Moy's cell on December 20, 2017.  (Id. ¶ 91).  In an email dated December 29, 2017,
nurse Poorman explained to Warden Shoemaker that she did not want a nebulizer
in Moy's cell due to improper use.  (Id. ¶ 92).  Dr. Keenan was not aware that Moy
had a nebulizer in his cell in December 2017.  (Id. ¶ 93).  Dr. Keenan was not
involved in the decision to place the nebulizer in Moy's cell in December 2017, nor
was he involved in the decision or order to remove the nebulizer from Moy's cell on
December 20, 2017.  (Id. ¶ 94).

When an inmate requests a breathing treatment because of asthma, the
inmate is assessed by a member of prison medical staff to determine if a breathing

treatment is indicated.  (Id. ¶ 95).  Nebulizer breathing treatments are administered

when objective findings indicate the need.  (Id. ¶ 96).  At his deposition, Moy

testified that after the nebulizer was removed from his cell, he still had access to

nebulizer breathing treatments.  (Id. ¶ 97).  Moy also testified that he did not

remember the nebulizer being removed from his cell or how the removal of the

nebulizer injured him.  (Id. ¶ 98).  On December 6, 14, 23, and 29, 2017, as well as

January 2 and 15, 2018, Moy requested nebulizer breathing treatments, but then

refused the treatments.  (Id. ¶ 99).  Further, on the following dates, Moy requested

nebulizer breathing treatments, but was not administered the treatments because

medical staff determined that he did not have a need for it: December 12, 14, 20, and

23, 2017; January 11, 2018; February 1 and 10, 2018; April 9, 2018; May 15, 18, 22, and

28, 2018; June 3, 7, and 27, 2018.  (Id. ¶ 100).

On December 20, 2017, Moy filed Grievance 12-18 complaining that his

nebulizer was removed from his cell.  (Id. ¶ 102).  On December 29, 2017, Deputy

Warden Shoemaker denied Grievance 12-18, stating that medical staff would

provide breathing treatments to Moy based on an assessment of need due to

respiratory distress.  (Id. ¶ 103).  Moy appealed the denial of Grievance 12-18 to

Warden DeParlos.  (Id. ¶ 103).  On February 16, 2018, Warden DeParlos denied the

appeal based upon the finding that Moy's medical file reflected that his medical

needs were being addressed and that Moy had refused medical care on more than

one occasion.  (Id.)  Moy appealed the Warden's denial of Grievance 12-18 to the

Prison Board.  (Id. ¶ 105).  The Prison Board denied Grievance 12-18.  (Id.)

Throughout Moy's incarceration at the Lycoming County Prison, although the nebulizer was removed from his cell due to misuse, it was available to him for breathing treatments whenever an assessment indicated a need for a breathing treatment.  (Id. ¶ 106).

On December 28, 2017, Dr. Schwab discussed inhaler overuse with Moy.  (Id. ¶ 107).  That same day, Moy filed Grievance 1-02, complaining that he had not received a breathing treatment upon request.  (Id. ¶ 108).  Deputy Warden Shoemaker denied Grievance 1-02 based upon reports from the medical department that Moy had been uncooperative with a nurse during his examination. (Id. ¶ 109).  On January 8, 2018, Moy appealed Grievance 1-02 to Warden DeParlos. (Id. ¶ 110).  On January 31, 2018, Warden DeParlos denied Grievance 1-02 because Moy's medical file indicated that he was uncooperative with medical staff and that he displayed no breathing problems.  (Id. ¶ 111).  There is no evidence that Moy appealed Grievance 1-02 to the Prison Board.  (Id. ¶ 112).

On June 23, 2018, Moy filed Grievance 06-13 due to the discontinuation of his breathing treatments.  (Id. ¶ 113).  Deputy Warden Barnes denied Grievance 06-13. (Id. ¶ 114).  There is no indication that Moy appealed Grievance 06-13 to the Warden.  (Id. ¶ 115).

Moy has not set forth any evidence that he filed any subsequent grievances regarding breathing treatments prior to his transfer to the State Correctional Institution, Benner Township.  (Id. ¶ 116).  Moy also has not produced any evidence to refute the above-stated facts.  (Id. ¶¶ 68, 101, 117).

**B.      Discussion**

1.      *Exhaustion of Administrative Remedies*

As stated, at all relevant times, the Lycoming County Prison had in place an inmate grievance policy, which is set forth in the prison's Inmate Handbook.  The Lycoming County Prison Inmate Handbook sets forth detailed specific instructions to be followed by inmates.  The grievance policy contains a three-step process for resolution: (1) the initial grievance, (2) an appeal to the Warden, and (3) an appeal to the Prison Board.  A grievance is not exhausted unless all reviews and appeals are timely taken and denied.  Failure to complete these three steps precludes an action under Section 1983 by an inmate, pursuant to the PLRA.  See 42 U.S.C. § 1997e(a).

On December 28, 2018, Moy submitted Grievance 1-02 complaining that he had not received a breathing treatment upon request.  Deputy Warden Shoemaker denied Grievance 1-02 based upon reports from the medical department that Moy was uncooperative with a nurse during his examination.  Moy appealed to Warden DeParlos.  On January 31, 2018, Warden DeParlos denied Grievance 1-02 and found that Moy's medical file indicated that he was uncooperative with medical staff and that he displayed no breathing problems.  Moy did not appeal the denial of this grievance to the Prison Board.

On June 23, 2018, Moy filed Grievance 06-13 regarding the discontinuation of his breathing treatments.  Deputy Warden Barnes denied grievance.  Moy did not appeal the denial of this grievance to the Warden.

It is undisputed that Moy failed to fully exhaust available administrative relief with regard to the alleged denial of breathing treatments as set forth in

Grievance 1-02 and Grievance 06-13.  Because Moy failed to exhaust available administrative remedies as required by the PLRA, Dr. Keenan is entitled to an entry of summary judgment on this claim.  Even if Moy had properly exhausted this claim, Dr. Keenan would be entitled to summary judgment on the merits, as discussed below.

### 2. *Deliberate Indifference to Medical Needs*

#### a. <u>Eye Injury</u>

When Moy presented for treatment in December 2017 and January 2018, Dr. Keenan considered his symptoms and, after he conducted an examination, assessed the eye injury, reviewed the medical records, considered the fact that Moy's ophthalmologist had intended the use of the eye drops to be temporary, and that Moy was noncompliant with refilling the eye drops prior to incarceration, Dr. Keenan concluded that he would not reorder the Ocuflox, Atropine, or Pred Forte eye drops.  Dr. Keenan also noted that Pred Forte may cause significant harm if used on a long-term basis and would not be reordered without an order from Moy's ophthalmologist.  He also noted that both Ocuflox and Atropine are short-term medications and would not have been reordered without an order from Moy's ophthalmologist.

No reasonable factfinder could conclude from the record before the court that Dr. Keenan acted with deliberate indifference.  On every occasion Moy presented for treatment, Dr. Keenan examined him, took into consideration his symptoms and complaints, and rendered treatment and medical advice.  There is not a single instance where Moy requested medical attention and was denied.  His

main argument, that he should have received previously prescribed eye drops,

constitutes a "mere disagreement as to the proper medical treatment." See

Lanzaro, 834 F.2d at 346.  It is clear from the record that Dr. Keenan employed

professional judgment in treating Moy's eye condition every time he presented with

complaints and symptoms.  See Brown, 903 F.2d at 278.  This precludes a finding

that Dr. Keenan acted with the "obduracy and wantonness" necessary to prove an

Eighth Amendment violation.  See Whitley v Algers, 475 U.S. 312, 319 (1986).  Dr.

Keenan is entitled to an entry of summary judgment.

### b. **Asthma**

Moy next asserts that Dr. Keenan exhibited deliberate indifference related to

the removal of a nebulizer machine from his cell and the denial of asthma related

breathing treatments.  However, Moy also acknowledges that nurse supervisor

Poorman was responsible for the removal of the nebulizer machine from his cell

and that the prison nurses denied nebulizer treatments.  (Doc. 1 at p. 10; Doc. 8 at 2

¶ 2; Doc. 115 at 77, Deposition of Tyree Tyquan Moy ("Moy Dep.")).  Moy fails to

establish that Dr. Keenan had any personal involvement in the removal of the

nebulizer from his cell, or the denial of breathing treatments.  Moreover, Moy

testified that he continued to receive nebulizer treatments after the machine was

removed from his cell and he cannot recall if he was injured by the removal of the

machine from his cell.  (Doc. 115 at 78-79, Moy Dep.).

Individual liability will be imposed under Section 1983 only if the state actor

played an "affirmative part" in the alleged misconduct.  See Evancho, 423 F.3d at

353 (quoting Rode, 845 F.2d at 1207).  When a plaintiff merely hypothesizes that an

individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow.  See Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.  Moy failed to present any evidence that Dr. Keenan ordered the removal of the nebulizer machine from his cell or that he denied a breathing treatment.  As such, Dr. Keenan is entitled to summary judgment on this claim.

### 3.    *Monell* Claim

To the extent that Moy sets forth a Monell claim against Dr. Keenan, this claim fails.  As stated *supra*, Monell requires a plaintiff to plead the existence of a policy or lack thereof, a policy maker that effectuated said policy, and a constitutional violation whose "moving force" was the policy in question.  See Monell, 436 U.S. at 690-91, 694.  Dr. Keenan is not a policymaker effectuating an official policy which is the moving force behind the alleged constitutional violation. Moy has not presented any evidence to refuse these facts.  Dr. Keenan is entitled to judgment in his favor on the Monell claim.

## V.    Conclusion

We will grant defendants' motions (Docs. 113, 116) and enter judgment in their favor.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        February 16, 2022